[807 NYS2d 494]

FEHER RUBBISH REMOVAL, INC., Respondent, v NEW YORK STATE DEPARTMENT OF LABOR, BUREAU OF PUBLIC WORKS, Appellant.

Fourth Department, December 22, 2005

APPEARANCES OF COUNSEL

*Eliot Spitzer, Attorney General*, New York City (*Seth Kupferberg* of counsel), for appellant.

*Ali, Pappas & Cox, P.C.*, Syracuse (*C. Andrew Pappas* of counsel), for respondent.

## OPINION OF THE COURT

PINE, J.

In each of these appeals defendant, the New York State Department of Labor, Bureau of Public Works (DOL), appeals from judgments wherein Supreme Court purported to annul the DOL's "determination[s]" that prevailing wages must be paid by Feher Rubbish Removal, Inc. and Syracuse Haulers Waste Removal, Inc. (collectively, plaintiffs) "for refuse collection under contracts with municipalities" to the extent that such "determination[s]" included properties that were not " 'public buildings' " as that term is defined by Labor Law § 2 (13). Additionally, the court declared that plaintiffs have "no obligation to pay prevailing wages to [their] employees under Article 9 of the New York State Labor Law, except to the extent that the property being serviced is a 'public building' as the term is defined by" Labor Law § 2 (13). At issue in these appeals is

whether Labor Law § 231 (1) requires employers to pay the prevailing wage to their employees who collect garbage or refuse from private buildings pursuant to contracts between the employers and municipalities. The issue is one of first impression in this state and, for the reasons that follow, we conclude that section 231 (1) requires employers to pay the prevailing wage to those employees.

I

Plaintiffs each commenced a combined CPLR article 78 proceeding and declaratory judgment action against the DOL. They did not, however, actually seek review of any formal determination by the DOL. Rather, they sought a declaration of rights in advance of a formal determination. Inasmuch as CPLR article 78 proceedings seek review of administrative determinations, actions or omissions (*see generally* CPLR 7803), we conclude that the combined CPLR article 78 proceedings and declaratory judgment actions are properly declaratory judgment actions only. Therefore, to the extent that the court purported to annul administrative determinations, we conclude that there were no such "determination[s]" to annul.

With respect to the court's declarations, we agree with the DOL that the court should have declared that plaintiffs are obligated to pay the prevailing wage to their employees who collect garbage or refuse from public or private buildings under the employers' contracts with the municipalities. Labor Law § 231 (1) provides that "[e]very contractor shall pay a service employee under a contract for building service work a wage of not less than the prevailing wage in the locality for the craft, trade or occupation of the service employee." The DOL contends that section 231 (1) requires plaintiffs to pay the prevailing wage to their employees who collect garbage or refuse from private buildings pursuant to plaintiffs' contracts with the municipalities at issue. Plaintiffs argue to the contrary, contending that section 231 (1) does not apply to the collection of garbage or refuse from private buildings but instead applies only to public buildings.

II

Inasmuch as these appeals involve "a question of statutory interpretation, we turn first to the plain language of the statutes as the best evidence of legislative intent" (*Matter of Malta Town Ctr. I, Ltd. v Town of Malta Bd. of Assessment Review*, 3 NY3d

563, 568 [2004]; *see* McKinney's Cons Laws of NY, Book 1, Statutes [hereafter, Statutes] § 92 [b]; § 94; *Majewski v Broadalbin-Perth Cent. School Dist.*, 91 NY2d 577, 583 [1998]). Labor Law § 231 (1) applies to contracts for building service work, and such work is defined as work performed by building service employees (*see* Labor Law § 230 [2]). A building service employee is defined as "any person performing work in connection with the care or maintenance of an existing building . . . for a contractor under a contract with a public agency . . . the principal purpose of which is to furnish services through the use of building service employees" (§ 230 [1]). Plaintiffs contracted with public agencies, to wit, the municipalities (*see* § 230 [3]), for the purpose of furnishing garbage and refuse collection services, and "occupations relating to the collection of garbage or refuse" are included in the definition of building service employee (§ 230 [1]). The issue before us in these appeals is whether "performing work in connection with the care or maintenance of an *existing building*" within the meaning of section 230 (1) is limited to a public building (emphasis added). Although the term "building" is not defined in article 9, "statutory language is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction" (Statutes § 94). We conclude that, in its natural and most obvious sense, the term "building" includes all buildings whether public or private. We thus conclude that employees who collect garbage or refuse are building service employees inasmuch as they perform work in connection with the care or maintenance of existing buildings.

We find nothing in the plain language of Labor Law § 231 (1) to support plaintiffs' contention that section 231 (1) applies only to public buildings. Because statutes and legislative acts should be construed as a whole when determining legislative intent (*see* Statutes § 97), we are guided by other sections of the Labor Law. Labor Law § 235 (7), which addresses potential penalties for violations of Labor Law article 9, provides that one possible penalty for multiple violations is that the contractor will become ineligible to submit bids or be awarded "public building service work" for a specified period of time. We reject plaintiffs' contention that the reference to "public" building service work in that section requires that the same limitation be read into section 231 (1) such that all references to "buildings" would be limited only to "public" buildings. "[M]eaning and effect should be given to every word of a statute. 'Words are

not to be rejected as superfluous where it is practicable to give each a distinct and separate meaning' " (*Leader v Maroney, Ponzini & Spencer,* 97 NY2d 95, 104 [2001], quoting *Cohen v Lord, Day & Lord,* 75 NY2d 95, 100 [1989]; *see* Statutes § 231). Furthermore, "[a]ll parts of a statute must be harmonized with each other as well as with the general intent of the whole statute" (Statutes § 98). In our view, the use of the term "public" in Labor Law § 235 (7) would be rendered superfluous if, as urged by plaintiffs, the term "public" is read into the references to building service employees in section 231 (1).

III

Despite the primary importance of literal construction, we recognize that "[t]he courts may in a proper case indulge in a departure from literal construction and . . . sustain the legislative intention although it is contrary to the literal letter of the statute" (Statutes § 111). Thus, "the legislative history of an enactment may also be relevant and 'is not to be ignored, even if words be clear' " (*Riley v County of Broome,* 95 NY2d 455, 463 [2000], quoting Statutes § 124, Comment, at 252; *see Matter of Tompkins County Support Collection Unit v Chamberlin,* 99 NY2d 328, 335 [2003]).

Considering the purpose of Labor Law article 9 and "the mischief sought to be remedied" (Statutes § 95; *see* § 96), we conclude that the prevailing wage requirement of Labor Law § 231 (1) applies to private buildings as long as the work is being done pursuant to a public work contract. Article 9 was enacted in 1971 "[t]o amend the labor law, in relation to prevailing wages for building service employees" (Senate bill cover page, Bill Jacket, L 1971, ch 777). According to the Office of the Industrial Commissioner, Labor Law article 9 would "require the payment of prevailing wages and fringe benefits to employees who work under the building service contracts with State and local governmental agencies" (Mem of Off of Indus Commr, at 1, Bill Jacket, L 1971, ch 777). When discussing prior legislative history, the Industrial Commissioner noted that, in 1969, a bill was proposed that "would have extended coverage of the *public work* prevailing wage law (Labor Law, Article 8) to all service employees" (*id.* [emphasis added]). That proposed bill was defeated (*see* Budget Report on Bills, at 1, Bill Jacket, L 1971, ch 777). In 1970 the proposed bill was amended to add a new article 9, which required prevailing wages for service employees and implemented procedures to determine prevailing

wages "similar to those . . . existing for public work" (Mem of Off of Indus Commr, at 2, Bill Jacket, L 1971, ch 777). At the time the instant amendment was proposed in 1971, "[s]tate law require[d] prevailing wages only on public work projects" (*id.*) and did not require prevailing wages for "employees of private contractors performing public work" for the State and local governments (Budget Report on Bills, at 1, Bill Jacket, L 1971, ch 777).

In approving the proposed amendment, the Labor Committee wrote that "[t]he fundamental public policy embodied in the bill is that service employees employed by a contractor or subcontractor in the performance of a service contract with a public agency should not be paid sub-standard wages" (Labor Comm Mem approving L 1971, ch 777, at 1, Bill Jacket, L 1971, ch 777). That public policy mandated "the payment of prevailing wages . . . to workers employed in the fulfillment of public works contracts" (*id.*). Significantly, that public policy is expressly embodied in Labor Law article 8 as well as in New York Constitution, article I, § 17.

Upon our review of the legislative history of Labor Law § 231 (1), we conclude that there is no indication that the Legislature intended to limit the application of Labor Law § 231 (1) to public buildings. Rather, the only limitation the Legislature intended is that section 231 (1) apply only to contracts for public work.

Inasmuch as the legislative history of Labor Law article 9 establishes that it was enacted to extend the protections of Labor Law article 8, we agree with plaintiffs that the ·two articles should be construed together (*see* Statutes § 221 [b]), but we conclude that Labor Law article 8 does not support plaintiffs' contention that Labor Law § 231 (1) applies only to public buildings. Labor Law § 220 (3), which is contained in article 8, requires that the prevailing rate of wages be paid to, inter alia, laborers employed in "public work" (*see also* Labor Law § 220-b [3] [b]; *Matter of Erie County Indus. Dev. Agency v Roberts*, 94 AD2d 532 [1983], *affd* 63 NY2d 810 [1984]). Nothing in the plain language of article 8 limits its applicability to public work on public buildings. Plaintiffs' reliance on our decision in *Matter of Erie County Indus. Dev. Agency* is misplaced. In that case we determined that Labor Law article 8 did not apply to the contracts at issue therein because the project was not a public work project (*id.* at 540). The fact that the project involved private property was a factor in determining whether

the nature of the work was public or private, but it was not the controlling factor.

## IV

"Contemporary definitions [of public work] focus upon the public purpose or function of the particular project . . . . To be a public work the project's primary objective must be to benefit the public" (*Matter of 60 Mkt. St. Assoc. v Hartnett*, 153 AD2d 205, 207 [1990], *affd* 76 NY2d 993 [1990]; *see Matter of Erie County Indus. Dev. Agency*, 94 AD2d at 538-539; *see also Matter of Sarkisian Bros. v Hartnett*, 172 AD2d 895, 896 [1991], *lv denied* 78 NY2d 859 [1991]). As correctly noted by the DOL, the interpretation of Labor Law § 231 (1) advanced by it is supported by the interpretation given to the federal Service Contract Labor Standards Act (41 USC § 351 *et seq.*; *see* 29 CFR 4.133 [a]), which served as a model to the Legislature in enacting Labor Law article 9 (*see* Mem of Off of Indus Commr, at 2, Bill Jacket, L 1971, ch 777). Inasmuch as the primary purpose of collecting garbage or refuse from buildings, whether public or private, is to benefit the public (*see City of Rochester v Gutberlett*, 211 NY 309, 315-316 [1914]; *P. & A. Carting Co. v City of New York*, 7 Misc 2d 815, 820 [1956]), we conclude that the court erred in declaring that, except to the extent that the property being serviced is a public building, plaintiffs have no obligation to pay prevailing wages to their employees under article 9 of the Labor Law.

## V

Accordingly, the judgments should be modified by vacating the first decretal paragraphs and amending the declarations to provide that, pursuant to Labor Law § 231 (1), plaintiffs are obligated to pay the prevailing wage to their employees who collect garbage or refuse from public or private buildings under plaintiffs' contracts with the municipalities at issue.

SCUDDER, J.P., MARTOCHE, LAWTON and HAYES, JJ., concur.

It is hereby ordered that the judgment so appealed from be and the same hereby is unanimously modified on the law by vacating the first decretal paragraph and amending the declaration to provide as follows:

"It is ADJUDGED AND DECLARED that, pursuant to Labor Law § 231 (1), plaintiff is obligated to

pay the prevailing wage to its employees who collect garbage or refuse from public or private buildings under its contracts with the Town of Salina and the Town of DeWitt and as modified, the judgment is affirmed without costs."